GLASSCOCK et al. v. WELLS et al.
(No. 1347.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1914. Rehearing Denied Dec. 3, 1914.)

1. HOSPITALS (§ 4*)—BOARD OF MANAGERS—APPOINTMENT.
    Section 12 of Act March 26, 1913 (Acts 33d Leg. c. 39; Vernon's Sayles' Ann. Civ. St. 1914, art. 1498*l*), provides for appointment by the commissioners of a board of managers for county hospitals for the care of persons suffering from illness or injury exists. *Held*, that a hospital established and maintained by a county, not to meet a temporary emergency like that arising from an epidemic of smallpox, but a permanent hospital, was contemplated, and appointment of a board to take charge of a building constructed for, but never equipped or used for, a hospital, and abandoned as unfit for the purpose, is not required.
    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 5–10; Dec. Dig. § 4.*]

2. HOSPITALS (§ 4*)—BOARD OF MANAGERS—APPOINTMENT.
    Neither does the statute require appointment of a board to take charge of pesthouses used only occasionally solely to treat cases of smallpox.
    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 5–10; Dec. Dig. § 4.*]

3. HOSPITALS (§ 4*)—BOARD OF MANAGERS—APPOINTMENT.
    A hospital operated by a city and county on their joint account pursuant to section 14 of Act March 26, 1913 (Acts 33d Leg. c. 39; Vernon's Sayles' Ann. Civ. St. 1914, art. 1498n), providing for its joint control by the commissioners' court and city authorities, is not a county hospital, within the provision of section 12 (article 1498*l*), for the appointment of a board of managers, and, moreover, control thereof by such a board is not only unauthorized but directly contrary to the provision in section 14.
    [Ed. Note.—For other cases, see Hospitals, Cent. Dig. §§ 5–10; Dec. Dig. § 4.*]

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Mandamus by R. D. Glasscock and the City of Paris against Rube S. Wells and others. From a judgment for defendants, the plaintiff City of Paris appeals. Affirmed.

Wright & Patrick, of Paris, Tex., for appellant. Moore & Hardison, of Paris, Tex., for appellees.

WILLSON, C. J. This was a mandamus suit brought by R. D. Glasscock and the city of Paris to compel the commissioners' court of Lamar county to appoint a board of managers for a hospital alleged to have been established by Lamar county within its limits. It was contended that the act March 26, 1913, entitled "An act authorizing the establishment of county hospitals," etc. (General Laws 1913, p. 71), charged said commissioners' court with the duty to appoint such a board. On the testimony before him the trial court thought the contention should be overruled, and rendered judgment refusing complainants the relief they sought. Glasscock, it is assumed, was satisfied with the judgment, as the appeal is prosecuted by the city alone.

At the threshold of the inquiry we are confronted with a question as to whether the city of Paris can maintain the suit or not. The question has not been argued in the briefs, and as we are of opinion the judgment should be affirmed, even though the question should be answered in the affirmative, we have not considered and will not determine it.

It appears from the record that Lamar

county owned a "poor farm," and in 1905 and 1906 constructed thereon a hospital building, but that it never equipped or used the building for hospital purposes. The reason why the building was not so equipped and used lies in the facts, perhaps, that it was without heating or lighting facilities and was found to be so badly constructed as to be unsafe. It further appears that the county had constructed two small buildings on said farm, and that same had been used by it, and also by the city of Paris, as a place to detain, care for, and treat persons suffering with smallpox. It further appears:

"That on December 23, 1892," quoting from findings of fact made by the trial court, "certain property known as the Aiken Hospital, within the corporate limits of the city of Paris, was conveyed to the; city by W. B. Aiken, upon certain terms and conditions, among them being that the city of Paris should manage and conduct the same as a hospital and annually make sufficient appropriations of money for the purpose of conducting it as a hospital commensurate with the needs of the sick of the city of Paris and Lamar county, and requiring the admission to said hospital of all white persons who were sick as should make a written statement of their inability to pay for their care and treatment free of charge, and providing for the admission to the hospital of the indigent white sick residing in Lamar county outside of the city of Paris upon such reasonable rate of charge as shall from time to time be agreed upon by the city of Paris and the county of Lamar. That since said date the city of Paris and Lamar county have expended large sums of money in improving and adding to said hospital, sharing such expenses equally, and for several years prior to this time have made annual appropriations in equal amounts, and have jointly managed, controlled, and conducted a hospital in which both pay and charity patients are accepted; charity patients from the city of Paris and Lamar county being given preference. That by the terms of the deed of gift no person suffering from any contagious or communicable disease can be admitted into said Aiken Hospital; that said Aiken Hospital affords adequate facilities for the care and treatment of all white sick of Paris and Lamar county, except persons suffering with contagious or communicable diseases."

The act referred to above provides that:

"The commissioners' court of any county shall have power to establish a county hospital and to enlarge any existing hospitals for the care and treatment of persons suffering from any illness, disease or injury, subject to the provisions of this act."

It further provides that:

"When the commissioners' court shall have acquired a site for such hospital and shall have awarded contracts for the necessary buildings and improvements thereon, it shall appoint five citizens of the county, of whom at least two shall be practicing physicians, and at least one a woman, who shall constitute a board of managers of said hospital."

Section 12 and parts of section 14 and section 15 of the act are as follows:

"Sec. 12. Wherever a county hospital for the care and treatment of persons suffering from any illness, disease or injury exists in connection with, or on grounds of a county poorhouse or elsewhere, the commissioners' court shall appoint a board of managers for such hospital, and such hospital, and its board of managers, shall thereafter be subject to all provisions of this act, in like manner as if it had been originally. estab-lished hereunder. Any hospital which may hereafter be established by any commissioners' court shall in like manner be subject to all the provisions of this act."

"Sec. 14. * * * It shall be lawful for the commissioners' court of any county to co-operate with and to join the proper authorities of any city or town having a population of ten thousand persons or more in the establishment, building, equipment and maintenance of a hospital in said city or town,. and to appropriate such funds as may be determined by said commissioners' court, after joint conference with the authorities of such city or town as may be necessary, and the management of such. hospital shall be under the joint control of such commissioners' court, and city authorities.

"Sec. 15. Where no provision is made as provided in section 14, and no county hospital is now provided for the purpose aforesaid, or where such provision is inadequate, it shall be the duty of the commissioners' court of each county which now has a city with a population of more than ten thousand persons, on or before December 1, 1913, and of any county which may later have a city with a population of more than ten thousand persons, within six months from the time when such city shall have attained such population, * * * to provide for the erection of such county hospital or hospitals, as may be necessary, for that purpose, and to provide therein a room or rooms, or ward or wards, for the care of confinement cases, and a room or rooms, or ward or wards, for the temporary care of persons suffering from mental or nervous disease, and also to make provision in separate buildings for patients suffering from tuberculosis and other communicable diseases, and from time to time to add thereto accommodations sufficient to take care of the patients of the county. This time may be extended by the state board of health for good cause shown. Unless adequate funds for the building of said hospital be derived from current funds of the county, available for such purpose, issuance of county warrants and scrip, it shall be the duty of the commissioners' court to submit, either at a special election called for the purpose, or at a regular election, the proposition of the issuance of county bonds for the purpose of building such hospital."

The suit, it will be remembered, is not to compel the commissioners' court to provide for the erection of a county hospital, but is to compel that court to appoint a board of managers for a county hospital alleged to have been established and to be in operation in the county.

[1] In support of its claim to the relief sought, the city contends: First, that the buildings constructed by the county on its poor farm, as stated, constituted a county hospital, within the meaning of the act; and, second, that the Aiken Hospital, operated as it was by the county jointly with the city, also was a county hospital, within the meaning of the act. Both contentions, we think, should be overruled.

[2] In providing for the appointment of a board of managers for a county hospital, it is obvious, we think, that the Legislature had in mind a hospital established and maintained by a county, not to meet a temporary emergency like that arising from an epidemic of smallpox, but permanently and continuously, for the treatment of illness, disease, and injuries generally. It is manifest from the provisions of the act that the Legisla-

ture did not mean to require the appointment of such a board to take charge of the building constructed by Lamar county for use as a hospital, but which it never equipped nor used for that purpose, and which, because it was unfit for the purpose, it had abandoned all intention of ever equipping and using. It is equally manifest from those provisions that the Legislature did not mean to require the appointment of such a board to take charge of the pesthouses used only occasionally and for no other purpose than to detain, care for, and treat persons suffering with smallpox. That the Legislature had in mind an institution of a permanent character, to be continuously maintained, equipped for the care and treatment of sick and injured people generally, is indicated by such provisions in the act as those fixing the term of office of members of the board of managers at two years, requiring the board to meet at the hospital at least once in every month, to appoint a superintendent and other officers for the hospital and fix their salaries, to appoint a staff of visiting physicians, etc., and by such provisions as the one conferring upon any ill, deseased, or injured resident of the county a right, on application made to the superintendent and a compliance with regulations prescribed, to be admitted as a patient.

[3] It is as plain, we think, that the Aiken Hospital in the city of Paris, operated by Lamar county and said city on their joint account, was not a county hospital, within the meaning of the provision in the act requiring the commissioners' court to appoint a board of managers. Aside from the fact that by the terms of the gift of that property to said city it was to be managed and controlled by the city alone, it seems clear, from a provision in section 14 of the act, that the Legislature did not contemplate that a board of managers should be appointed for a hospital so operated. The provision referred to is the one declaring that the management of a hospital operated by a county and a city therein having a population of 10,000 persons, as the city of Paris had, should be "under the joint control of such commissioners' court and city authorities." An attempt to place this hospital under the control of a board of managers appointed for the purpose would not only be unauthorized by the act but would be, in face of the provision thereof, specified directly to the contrary.

The judgment is affirmed.